Baljit SINGH, Petitioner,

v.

John ASHCROFT, Attorney General, Respondent.

No. 01–70505.

United States Court of Appeals, Ninth Circuit.

Submitted June 10, 2002.*

Filed Aug. 27, 2002.

Ashwani K. Bhakhri, Burlingame, CA, for the petitioner-appellant.

John D. Williams, DOJ, Washington, DC, for the respondent-appellee.

Before LAY,** FERGUSON and TALLMAN, Circuit Judges.

Opinion by Judge FERGUSON; Dissent by Judge TALLMAN.

---

\* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

\*\* Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

## OPINION

FERGUSON, Circuit Judge.

Baljit Singh ("Singh"), a native and citizen of India, petitions for review of the Board of Immigration Appeals' ("BIA") order denying his application for asylum and withholding of removal. We have jurisdiction pursuant to 8 U.S.C. § 1252(b). We conclude that the BIA erred in affirming the Immigration Judge's ("IJ") adverse credibility determination because any inconsistencies in Singh's testimony were either minor or not contradictory.

## I. BACKGROUND

### A. Facts[1]

Singh is a 32–year–old native of the Punjab region in India. He is a citizen of India and a follower of the Sikh religion. He has a wife and two children, all of whom remain in India. While in India, Singh worked as a farmer. He has received a formal education through the tenth grade.

In April 1992, Singh joined the Akali Dal Mann party (the "Party"), a political organization campaigning for an independent Khalistan. Singh's activities with the Party included putting up posters, collecting donations, and transporting people to and from Party rallies.

On June 6, 1995, Singh was arrested at his home by eight to ten Punjab police officers after attending a political rally organized by the Party. Singh was taken into custody and transported to the Samarala police station. Singh's hands and feet were bound, and he was beaten and burned on the arms by officers. At the deportation hearing, Singh exhibited what appeared to be burn marks on his arms and testified that, during the beating, the police officers said to him, "Son of dog, we'll give you Khalistan." Singh was never brought before a judge or magistrate. Singh was released three days later, after his father paid a bribe of 40,000 rupees. Singh was admitted to a hospital, where his injuries were treated for two weeks under the care of Dr. Gursharan Singh. At the deportation proceedings, Singh submitted a letter from Dr. Singh corroborating his hospitalization and treatment, and noting the "injuries to [Singh's] lips, nose, feet, and groin."

After the beating, Singh initially refrained from participating in any political activities. However, he resumed his active support of the Party a year later, at the urging of a friend. On January 26, 1997, Singh was transporting people back to their village following a political rally when he was informed that police officers were waiting to arrest him at his home. Singh fled to avoid arrest, first staying with an aunt in Gangoorakot for eight days, then with a relative in Nupee for five months, then with another relative in Boonbikoda. Singh later returned in disguise to his home village for two days because he heard that his wife was ill and in the hospital. One week later, he departed from Delhi and eventually entered the United States without admission in September 1997.

### B. Procedural History

On December 2, 1997, Singh applied for asylum and withholding of removal to the Immigration and Naturalization Service ("INS"). On February 6, 1998, the INS issued a Notice to Appear, alleging that, under Section 212(a)(6)(A)(i) of the Immigration and Naturalization Act ("INA"), Singh was removable from the United States by reason of having entered without admission or parole.

---

1. The following factual background is based on Singh's application for asylum, testimony adduced at the asylum hearing, and corroborating evidence.

At the removal hearing, Singh conceded removability. At a subsequent hearing, the IJ denied Singh's application for asylum and withholding of removal on the grounds that his testimony lacked credibility. In addition, the IJ rejected Singh's application for voluntary departure because he had not been physically present in the United States for a year or more.

On appeal, the BIA conducted a de novo review of the record and affirmed the IJ's adverse credibility determination. The BIA cited three reasons for its adverse credibility determination: the omission of Singh's arm injuries in the doctor's letter and the inadequacy of Singh's explanation for this omission; the discrepancy regarding the location of the January 1997 political rally; and Singh's alleged unresponsiveness to questions at the hearing. Finding Singh's testimony not credible, the BIA declined to consider the merits of Singh's asylum and withholding of removal claims, reasoning that "a persecution claim which lacks veracity cannot satisfy the burdens of proof and persuasion necessary to establish eligibility for asylum and withholding of removal."

Singh filed this timely appeal.

## II. DISCUSSION

### A. Standard of Review

■ We review the BIA's denial of asylum for substantial evidence. *Al Harbi v. INS*, 242 F.3d 882, 888 (9th Cir.2001). We must affirm if the BIA's determination is "supported by reasonable, substantial, and probative evidence," and we reverse only if "the evidence [that the petitioner] presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Where, as here, the BIA reviews the IJ's decision de novo, our review is limited to the BIA's decision.[2] *Ghaly v. INS*, 58 F.3d 1425, 1430 (9th Cir.1995).

### B. The BIA's Adverse Credibility Finding

■ Singh claims that he is entitled to asylum and withholding of removal pursuant to INA § 208(a) and former § 243(h).[3] The credibility of a petitioner's oral testimony before the IJ is critical for establishing the requisite fear of persecution necessary to grant asylum or withholding of removal. *See Salazar–Paucar v. INS*, 281 F.3d 1069, 1073–74 (9th Cir.), *amended by* 290 F.3d 964 (9th Cir.2002).

■ To support an adverse credibility determination, the BIA must have "a legitimate articulable basis to question the petitioner's credibility, and must offer a specific, cogent reason for any stated disbelief." *Shah v. INS*, 220 F.3d 1062, 1067 (9th Cir.2000) (quoting *Garrovillas v. INS*, 156 F.3d 1010, 1013 (9th Cir.1998)). Inconsistencies in the petitioner's statements must go to "the heart of [his] asylum claim" to justify an adverse credibility finding. *Chebchoub v. INS*, 257 F.3d 1038, 1043 (9th Cir.2001) (alteration in original) (quoting *Ceballos–Castillo v. INS*, 904 F.2d 519,

**2.** Although the BIA stated that it would not "disturb" the IJ's adverse credibility finding based on her "entire explanation," the BIA did not adopt the IJ's opinion, instead conducting an independent review of the record and providing its own explanation of the evidence that supported its adverse credibility finding. *See Alaelua v. INS*, 45 F.3d 1379, 1381–82 (9th Cir.1995) (finding that the BIA adopted the IJ's opinion where, in a one-paragraph opinion, the BIA did not analyze the relevant factors but instead commented that "the [IJ] adequately and correctly addressed the issues raised on appeal" and "affirmed based upon and for the reasons set forth in [the IJ's] decision"). Therefore, our review is limited to the BIA's opinion.

**3.** This section has since been moved to INA § 241(b)(3), 8 U.S.C. § 1231(b)(3).

520 (9th Cir.1990)). " 'Minor inconsistencies' that 'reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding.' " *Osorio v. INS,* 99 F.3d 928, 931 (9th Cir.1996) (quoting *Vilorio–Lopez v. INS,* 852 F.2d 1137, 1142 (9th Cir.1988)). Thus, we must determine whether the evidence cited by the BIA supports its adverse credibility finding.

Here, the BIA based its finding on alleged inconsistencies regarding the injuries Singh sustained from the police beating, the location of the January 1997 political rally, and Singh's alleged unresponsiveness during the hearing. Each of these reasons is discussed in turn.

### 1. Singh's Injuries

The BIA found Singh's testimony regarding the injuries he sustained from the police beating not to be credible, on the ground that it was inconsistent with Dr. Gursharan Singh's letter. However, not only was Singh's testimony not inconsistent, it was also corroborated by physical evidence.

First, the BIA stated the letter to be inconsistent with Singh's testimony because the letter noted "injuries to [Singh's] lips, nose, feet, and groin" but did not mention any injury to his arms. However, the omission in the doctor's letter does not make the two accounts inconsistent. The term "inconsistent" is defined in Webster's Dictionary as "lacking in correct logical relation: contradictory" or "not in agreement or harmony: incompatible." Webster's II New College Dictionary 561 (1st ed.1995). Had the letter stated that Singh was not treated for injuries or that Singh had no burns on his arms or that he was treated only for the stated injuries, it would have been inconsistent with Singh's testimony. A mere omission of one detail

included in Singh's oral testimony does not make the letter logically inconsistent or incompatible. *See Osorio,* 99 F.3d at 931 ("[T]he omission of details from an applicant's earlier testimony cannot serve as the basis for an adverse credibility finding: 'If minor inconsistencies or misrepresentations of unimportant facts cannot constitute the basis for an adverse credibility finding, *a fortiori* minor omissions cannot.' ") (emphasis in original) (quoting *Aguilera–Cota v. INS,* 914 F.2d 1375, 1382 (9th Cir.1990)). As the doctor's letter is not inconsistent with Singh's testimony, it cannot serve as the basis for the BIA's adverse credibility determination.

Second, Singh presented evidence corroborating his oral testimony. An adverse credibility determination may be reversed on appellate review when the applicant has provided corroborating evidence, even if the IJ had some basis for disbelieving the applicant. *Cf. Sidhu v. INS,* 220 F.3d 1085 (9th Cir.2000) ("[W]here the IJ has reason to question the applicant's credibility, and the applicant fails to produce nonduplicative, material, easily available corroborating evidence and provides no credible explanation for such failure, an adverse credibility finding will withstand appellate review."). Here, Singh had burn marks on his arms, as noted at the asylum hearing. The burn marks, in conjunction with the doctor's letter, corroborate the fact that Singh sustained injuries and support his testimony that one of the injuries sustained from the beating was the burning of his arms. *See Gui v. INS,* 280 F.3d 1217, 1227 (9th Cir.2002) (recognizing that corroborative evidence strengthens a petitioner's case). Singh's corroborating evidence has not been contested by the respondent and provides "credible, direct, and specific evidence ... that would support a reasonable fear of persecution."[4] *Duarte de*

---

4. The BIA's characterization of the doctor's seven-line letter as "strongly indicative of [Singh's] lack of credibility" is simply not

*Guinac v. INS,* 179 F.3d 1156, 1159 (9th Cir.1999) (noting that an applicant may provide such evidence "either through the production of specific documentary evidence or by credible and persuasive testimony").

The BIA did not directly question either the fact that Singh had been beaten and injured by the police for his political activities or that the beating was so severe he had to be hospitalized for two weeks. It was improper for the BIA to ignore these facts, which went to the foundation of Singh's asylum claim, by invoking adverse credibility based on a minor omission in the doctor's letter. Thus, we cannot affirm the BIA's adverse credibility determination on this basis.

### 2. Location of the 1997 Political Rally

The BIA also found Singh's testimony regarding the January 26, 1997 political rally to be inconsistent and not credible. Singh testified that he had transported people to a political rally, after which he immediately went into hiding to avoid arrest. The BIA found Singh's testimony on this point not credible because he stated at the hearing that the rally was held at the neighboring village of Chandana, whereas his written statement accompanying the asylum application indicated that the rally was held nearer to his home village.

However, any discrepancy between Singh's oral testimony and his written statement is minor. If discrepancies "cannot be viewed as attempts by the applicant to enhance his claims of persecution," they have "no bearing on [his] credibility." *Da-*

---

tenable. The doctor's letter reads as follows: "It is certified that Mr. Baljit Singh ... remained under my treatment from 9–6–95 to 22–6–95. He was suffering from lacerated wounds on lips and nose, multiple bruises and soft tissus (sic) injury in groin area and on feet alleged to have sustained during po-

*maize–Job v. INS,* 787 F.2d 1332, 1337 (9th Cir.1986).

The salient point for Singh's claim of persecution is that he actually attended a political rally, not its specific location. *See Martinez–Sanchez v. INS,* 794 F.2d 1396, 1400 (9th Cir.1986) (finding that an inconsistency as to the date petitioner joined a paramilitary group and claiming he had four children in oral testimony while only noting two children on his written declaration were "trivial errors" not constituting "a valid ground upon which to base a finding that an asylum applicant is not credible") (citations omitted). Any confusion regarding the location of the rally does not go to the heart of Singh's asylum claim and cannot support an adverse credibility finding. *Chebchoub,* 257 F.3d at 1043 ("Generally, minor inconsistencies ... relating to unimportant facts will not support an adverse credibility finding.") (quoting *de Leon–Barrios v. INS,* 116 F.3d 391, 393 (9th Cir.1997)).

### 3. Singh's Unresponsiveness

Finally, the BIA based its adverse credibility decision on "the numerous times [Singh] was unresponsive to questions posed to him." The BIA did not cite specific examples, but referenced the IJ's observation of this alleged unresponsiveness. However, the IJ did not cite specific examples either, noting only that "[t]here were several instances in which the questions had to be repeated to [Singh] or[his] answers simply were not responsive to questions put to him."

---

lice torture." The BIA cannot construe the letter as inconsistent with Singh's testimony merely because the doctor could have written a longer and more detailed letter. *Gui,* 280 F.3d at 1227 (a petitioner's "failure to produce still more supporting evidence should not be held against him").

To support an adverse credibility determination based on unresponsiveness, the BIA must identify particular instances in the record where the petitioner refused to answer questions asked of him. *Garrovillas,* 156 F.3d at 1014, 1016. A general statement that the petitioner was "unresponsive" to questions is insufficient; the BIA "must articulate with specificity any inconsistencies or evasions it finds." *Id.*

Here, the BIA failed to specify any example of unresponsiveness by Singh. Moreover, our review of the record revealed no instance in which Singh evaded or refused to answer a direct question put to him. Thus, the BIA's general statement that Singh was unresponsive does not support its adverse credibility determination.

In sum, we reverse the BIA's adverse credibility determination. The BIA failed to provide "a legitimate, articulable basis to question the petitioner's credibility." *Shah,* 220 F.3d at 1067. Dr. Singh's letter supports Singh's testimony, the uncertainty regarding the location of the January 1997 political rally is a minor inconsistency, and the BIA identified no particular instance where Singh was unresponsive to a specific question put to him.

## III. CONCLUSION

The BIA's adverse credibility determination was not supported by substantial evidence. Therefore, we grant Singh's petition and reverse the BIA's denial of his claims for asylum and withholding of removal. The BIA affirmed solely on the basis of its finding of adverse credibility. It failed to consider whether Singh would have "established eligibility for asylum and withholding of removal had he testified credibly." Therefore, we remand to the BIA for further proceedings to consider the merits of Singh's application for asylum and for withholding of removal consistent with this opinion.

Petition for review **GRANTED** and **REMANDED.**

TALLMAN, Circuit Judge, dissenting:

Because I believe that there was substantial evidence to support the BIA's adverse credibility determination, the BIA sufficiently articulated its bases for that determination, and the evidence does not compel a contrary result, I respectfully dissent from the grant of the petition for review in this case.

An adverse credibility finding by the BIA is reviewed under the substantial evidence standard. *See Chebchoub v. INS,* 257 F.3d 1038, 1042 (9th Cir.2001). Under this highly deferential standard, we are "compelled to uphold the factual findings of the BIA if those findings are supported by reasonable, substantial, and probative evidence." *Valderrama v. INS,* 260 F.3d 1083, 1085 (9th Cir.2001) (internal quotations omitted). We must uphold the BIA's findings unless the evidence presented would *"compel[ ]* a reasonable factfinder to reach a contrary result." *de Leon–Barrios v. INS,* 116 F.3d 391, 393 (9th Cir.1997) (emphasis added). Thus, where the BIA provides a "specific, cogent reason" for questioning a petitioner's credibility, *Garrovillas v. INS,* 156 F.3d 1010, 1013 (9th Cir.1998), the petitioner must show that the evidence compelled a contrary conclusion in order to overcome the special deference accorded to the BIA's credibility determinations. *See Chebchoub,* 257 F.3d at 1042; *De Leon–Barrios,* 116 F.3d at 393.

The BIA conducted an independent review of the record in this case and made an adverse credibility determination "supported by reasonable, substantial, and probative evidence." *Valderrama,* 260 F.3d at 1085. The BIA provided a "legitimate articulable basis to question [Singh's] credibility." *Garrovillas,* 156 F.3d at 1013. In

doing so, it properly evaluated the inconsistencies regarding the injuries Singh suffered and the location of the 1997 rally, as well as Singh's testimony before the Immigration Judge attempting to explain these inconsistencies. *See id.* Although the Court's assertion that these discrepancies are not contradictory or are minor is plausible, that interpretation is not *compelled* by the evidence that was before the BIA. *See Chebchoub*, 257 F.3d at 1042; *De Leon–Barrios*, 116 F.3d at 393. The BIA's decision should therefore be upheld.