NOT FOR PUBLICATION

FILED

NOV 23 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALEKS DUSHI, | No. 06-71272, 06-74597 |
| Petitioner, | Agency No. A079-433-494 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 8, 2010
Pasadena, California

Before: PREGERSON, D.W. NELSON and IKUTA, Circuit Judges.

Aleks Dushi ("Dushi"), a native and citizen of Albania, petitions for review

of the Board of Immigration Appeals' ("BIA") order dismissing his appeal from an

immigration judge's ("IJ") decision denying his application for asylum,

withholding of removal, and relief under the Convention Against Torture ("CAT").

We have jurisdiction under 8 U.S.C. § 1252. The BIA issued a written decision

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

and adopted the IJ's adverse credibility determination.  We therefore review the BIA's decision.  *See Baghdasaryan v. Holder*, 592 F.3d 1018, 1022 (9th Cir. 2010); *see also Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006).  We grant the petition and remand.

## I. Credibility

Credibility determinations are reviewed under the substantial evidence standard.  *Soto-Olarte v. Holder*, 555 F.3d 1089, 1091 (9th Cir. 2009).  Under the substantial evidence standard, credibility findings are upheld unless evidence compels a contrary result.  *See Don v. Gonzales*, 476 F.3d 738, 741 (9th Cir. 2007).  The BIA must articulate a legitimate basis on which to question an applicant's credibility and must offer specific and cogent reasons for any stated disbelief.  *See Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir. 2002).  "[W]hen each of the IJ's or BIA's proffered reasons for an adverse credibility finding fails, we must accept a petitioner's testimony as credible."  *Kaur v. Ashcroft*, 379 F.3d 876, 890 (9th Cir. 2004).

We recite the facts only as needed to explain our decision,[1] and we conclude that substantial evidence does not support the BIA's adverse credibility determination.

Because Dushi filed his claim for asylum before May 11, 2005, we apply the pre-REAL ID Act standards for adverse credibility findings. *See Sinha v. Holder*, 564 F.3d 1015, 1021 n.3 (9th Cir. 2009) (applying pre-REAL ID Act standards because petitioner's asylum application was filed before May 11, 2005). Under our pre-REAL ID Act standard, "[m]inor inconsistencies in the record that do *not* relate to the basis of an applicant's alleged fear of persecution, [do not] go to the heart of the asylum claim, or [do not] reveal anything about an asylum applicant's fear for his safety are *insufficient* to support an adverse credibility finding." *Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 660 (9th Cir. 2003) (emphasis

---

[1]Dushi testified that his family has been active in the anti-communist movement in Albania. The Communist Party confiscated his family's land, murdered his uncle, and arrested his father on charges of agitation and propaganda. A bomb was thrown into Dushi's house, and two police officers approached Dushi's father two days later and asked, "Are you still alive?" They threatened to kill Dushi if his father remained in the Democratic Party. Dushi testified that he has personally suffered because of his work with the Democratic Party. On his way home from a Democratic Party meeting, Dushi and two of his friends were shot at from a car driving by. Dushi's friend was killed, and his other friend was injured. A police officer was charged with the killing. Dushi also testified that the police arrested him on three occasions. Each time, Dushi was badly beaten and warned to stop his political activities. After the third arrest and beating, Dushi fled Albania and sought political asylum in the United States.

3

added).  Discrepancies that are not attempts to enhance claims of persecution generally have no bearing on credibility.  *Singh v. Ashcroft*, 362 F.3d 1164, 1171 (9th Cir. 2004).

The BIA affirmed the IJ's adverse credibility finding based on four inconsistencies between Dushi's airport interview and his asylum proceedings. Two of these inconsistencies do not go to the heart of Dushi's asylum claim.  First, whether Dushi bought his fake passport in Albania or in France does not relate to the merits of Dushi's asylum claim.  *See Zhu v. Mukasey*, 537 F.3d 1034, 1043 (9th Cir. 2008) ("The inconsistency about whether [petitioner] acquired her passport in Hong Kong or in Chile. . . fails to go to the heart of her asylum claim.").  Second, whether Dushi changed his name in Albania or when he converted to the Greek Orthodox faith in Greece also does not relate to the merits of Dushi's asylum claim.  Further, Dushi explained that he considered the name change in Albania to be only on "paper" and that it was not until he converted to the Greek Orthodox faith and took a Christian name that he felt he had changed his name.  Because these two inconsistences do not go to the heart of Dushi's asylum claim and do not relate to the persecution he alleges, the BIA improperly relied on them to find Dushi not credible.

4

Additionally, the IJ must consider and address the applicant's explanation for an identified discrepancy. *See Soto-Olarte v. Holder*, 555 F.3d 1089, 1095 (9th Cir. 2009). Here, the IJ did not address Dushi's plausible explanations for his other two inconsistencies.

In his merits hearing, Dushi explained that he was in a terrible mental state when he arrived in the United States, having just fled Albania, and that he was frightened of being deported. Dushi testified that as a result, he did not remember what he told the immigration officer at the airport.

Even though the IJ did not address Dushi's explanation, the BIA did and concluded that his explanation was "patently inconsistent" with his purpose of coming to this country to seek asylum. However, we "hesitate to view statements given during airport interviews as valuable impeachment sources because of the conditions under which they are taken and because a newly-arriving alien cannot be expected to divulge every detail of the persecution he or she sustained." *Li v. Ashcroft*, 378 F.3d 959, 962-63 (9th Cir. 2004); *see Singh v. INS*, 292 F.3d 1017, 1021-24 (9th Cir. 2002). Moreover, it is perfectly understandable that Dushi would be reluctant to fully disclose his circumstances during the airport interview, given his experience with government officials in Albania. *See Singh v. INS*, 292 F.3d at 1023 (recognizing that 'an arriving alien who has suffered abuse during

5

interrogation sessions by government officials in his home country may be reluctant to reveal such information during the first meeting with government officials in this country'" (quoting *Balasubramanrim v. INS*, 143 F.3d 157 (3d Cir. 1998))).  Thus, the BIA erred because it did not fully consider the reality of Dushi's situation as a newly-arriving refugee who feared being deported.

The BIA also concluded that Dushi was not credible because the doctor's report he submitted did not mention his stabbing wound.  However, in nearly identical circumstances we have concluded that the omission of details from a doctor's report is "insufficient to uphold an adverse credibility finding."  *Singh v. Ashcroft*, 301 F.3d 1109, 1112 (9th Cir. 2002).  Additionally, in this case, the doctor's report Dushi submitted was prepared by the same doctor in Albania who told him not to file a complaint against the police officers who beat him.  Under these circumstances, the BIA erred in finding that Dushi was not credible because this doctor omitted a serious injury from his report.

Last, the BIA erred in requiring corroborative evidence, which, under the pre-REAL ID Act standard, is only required where the petitioner has failed to testify credibly.  *See Ladha v. INS*, 215 F.3d 889, 901 (9th Cir. 2000) (affirming that an "alien's testimony, if unrefuted and credible, direct and specific, is sufficient to establish the facts testified without the need for any corroboration"),

6

*overruled on other grounds by Abebe v. Mukasey*, 554 F.3d 1203, 1208 (9th Cir. 2009) (en banc) (per curiam); *see also Kataria v. INS*, 232 F.3d 1107, 1113 (9th Cir. 2000) ("[T]he BIA may not require independent corroborating evidence from an asylum applicant who testifies credibly. . . ."). As discussed above, substantial evidence does not support the IJ's adverse credibility finding, so Dushi should be deemed credible. Because corroborative evidence is not required where a petitioner testified credibly, the BIA erred in finding Dushi not credible because he failed to submit an affidavit from his aunt in Greece.

Moreover, the IJ erred in not giving Dushi an opportunity to explain why he had not provided an affidavit from his aunt. *See Sidhu v. INS*, 220 F.3d 1085, 1091 (9th Cir. 2000); *Arulampalam v. Ashcroft*, 353 F.3d at 688. The IJ never specifically requested testimony or an affidavit from Dushi's aunt and stated for the *first* time in her decision that the absence of such evidence from his aunt was a ground for finding Dushi not credible. Thus, the IJ erred in not providing Dushi an opportunity to explain why he had not submitted an affidavit from his aunt.

In sum, because the BIA's determination that Dushi was not credible is not based on substantial evidence, we grant the petition and remand to the BIA for further consideration in light of Dushi's credible testimony. *See Guo v. Ashcroft*, 361 F.3d 1194, 1201 (9th Cir. 2004).

7

## II. Motion to Reopen

Because we grant Dushi's petition for review, vacate the BIA's adverse credibility finding, and remand pursuant to *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (per curiam), we need not decide whether the BIA erred in denying Dushi's motion to reopen based on his submission of new evidence.

## III. Conclusion

We GRANT the petition and REMAND to the BIA for further proceedings to determine whether, accepting Dushi's testimony as credible, he is eligible for relief. *See, e.g.*, *Singh v. Gonzales*, 439 F.3d 1100, 1113 (9th Cir. 2006).

**PETITION GRANTED AND REMANDED**

*Dushi v. Holder*, No. 06-74597, 06-71272

IKUTA, Circuit Judge, dissenting:

Aleks Dushi made crucial misrepresentations in his airport interview. In a sworn statement at the airport, he claimed that he had never been arrested. But at his hearing he claimed that he had been arrested three times by the Albanian police. At the airport, he stated he was living in Greece from 1997 to 2000 working at a bakery. But at his hearing he claimed that he left Greece in January 1998, and was in Albania in 1998 and 1999, where he was arrested, and later involved in a shooting. There were additional problems with Dushi's testimony. Among other things, he claimed that in June 2001 he had been arrested by the chief of police, beaten, kicked, and cut with a knife on his right wrist, resulting in a one-inch wound which bled heavily and required stitches. But no mention of this allegedly serious wound, the worst of his claimed injuries, appeared in the medical records that he submitted. Relying on this and other discrepancies, the BIA and IJ held that Dushi was not credible.

Our responsibility in reviewing the agency's adverse credibility decision is a limited one. We are to determine whether the decision is supported by substantial evidence and we must uphold the agency's decision unless *no* reasonable fact finder could reach this conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483–84

1

(1992). In light of the discrepancies in Dushi's testimony, the agency's adverse credibility determination is well supported here.

In order to claim that it is *compelled* to overturn the agency's reasonable determination, the majority must conclude that nothing said by an asylum-seeking alien at an airport interview counts for purposes of making an adverse credibility determination. But of course, our cases do not go that far. While we have held that an airport interview is not a reliable basis for an adverse credibility determination where the interview is impeded by language difficulties, *see Li v. Ashcroft*, 378 F.3d 959, 962–63 (9th Cir. 2004); *Singh v. INS*, 292 F.3d 1017, 1023 (9th Cir. 2002), no language difficulties were present here, as an Albanian interpreter participated in Dushi's airport interview via telephone. Moreover, in a statement signed under penalty of perjury, Dushi affirmatively indicated that he understood the questions, that his answers were voluntary, and that he was telling the truth.

We have also held that under certain limited circumstances, an alien's omission of personal or deeply painful experiences in an airport interview cannot form the basis of an adverse credibility determination. Thus in *Paramasamy v. Ashcroft*, we held that a young Tamil woman's failure to tell the airport interviewer about her sexual assault by government agents was not evidence supporting an

2

adverse credibility determination, where the asylum officer had not questioned her on that issue, and she had a natural and reasonable reluctance to discuss it with male interviewers. 295 F.3d 1047, 1053 (9th Cir. 2002). But here Dushi did not merely omit information; he affirmatively misrepresented it.

Although Dushi tried to explain away his misstatements by asserting that he feared to give honest answers at the airport in the event that he was repatriated to Albania, where Albanian officials would abuse him, an alien's dishonest statements are substantial evidence that the alien is not credible, regardless of the alien's motivations. We have no authority to formulate a rule that false statements to an airport interviewer cannot form the basis for an adverse credibility determination, which would be akin to telling the Executive Branch that airport interviews of asylum seekers have little or no utility. Given the evidence in the record, including Dushi's airport interview, nothing here permits us, let alone compels us, to overturn the agency's determination that Dushi is not credible.

The majority also claims that it is compelled to overturn the agency's adverse credibility determination because the IJ failed to consider and address Dushi's explanation for his dishonest answers and discrepancies in the record. *See Soto-Olarte v. Holder*, 555 F.3d 1089, 1095 (9th Cir. 2009). But the record does not support this claim. At the hearing before the IJ, the government attorney

3

questioned Dushi at length about the misstatements at the airport interview, and provided him with an opportunity to give explanations. The IJ and the BIA considered Dushi's explanations and rejected them, noting that it was unreasonable for an alien seeking political asylum to misrepresent his prior arrests and mistreatment by officials in his home country, and that fear did not explain his misrepresentations about the length of his stay in Greece. Nothing in the record compels us to overturn this conclusion. Similarly, the IJ and BIA rejected Dushi's explanation for the discrepancy between Dushi's claim that he suffered a serious knife wound and the failure of his treating physician to mention it. Again, there is no basis for overturning the agency's conclusion on this point. Unlike the alien in *Singh v. Ashcroft*, 301 F.3d 1109, 1112 (9th Cir. 2002), on which the majority mistakenly relies, Dushi did not offer hospital records or other reliable evidence to corroborate his most serious physical injury. In sum, Dushi failed to carry his burden of explaining the numerous inconsistencies or producing corroborative evidence to authenticate his version of events. *Sidhu v. INS*, 220 F.3d 1085, 1090 & n.2 (9th Cir. 2000).

The majority tries to elide the evidence of Dushi's lack of credibility by making excuses for him and pointing to allegedly extenuating circumstances. Maj. Op. 4–6. While the majority could take this approach if it were deciding Dushi's

4

asylum request in the first instance, it does not have the authority to do so when reviewing an agency determination for substantial evidence. A fair view of the record shows that the BIA's adverse credibility determination was amply supported by the record. Accordingly, I respectfully dissent.